IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOHN DOE 1, et al.,

Plaintiffs,

v.                                                    CIVIL ACTION NO.   2:26-cv-00194

JAMES L. MITCHELL,

Defendant.

MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant James L. Mitchell's Motion to Dismiss* (Document 13), *Defendant James L. Mitchell's Memorandum of Law in Support of Motion to Dismiss* (Document 15), the *Plaintiff's Opposition to Motion to Dismiss by Defendant James L. Mitchell* (Document 16), and *Defendant James L. Mitchell's Reply in Support of Motion to Dismiss* (Document 17), as well as the *Complaint Under 42 U.S.C. § 1983* (Document 1).

PERMISSION TO PROCEED ANONYMOUSLY

The Court has further reviewed Plaintiff's *Motion for Permission to Proceed Anonymously and Brief in Support* (Document 3) and *Defendant James L. Mitchell's Response in Opposition to Plaintiffs' Motion for Permission to Proceed Anonymously* (Document 9).

Federal Rule of Civil Procedure 10(a) states that the complaint "must name all the parties," and there is a presumption that the openness of judicial proceedings includes disclosure of party names. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)).   However, "under appropriate circumstances," it is within the clear

discretion of the trial court to allow the party to proceed in anonymity.  *Jacobson*, 6 F.3d at 238.

Simply stated, anonymity may be permitted when "privacy or confidentiality concerns are . . .

sufficiently critical that parties or witnesses should be allowed this rare dispensation."  *Id.*

This inquiry is fact-intensive and case-specific.   To aid this inquiry, the Fourth Circuit has

provided the following non-exhaustive *Jacobson* factors:

(1) Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
(2) Whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
(3) The ages of the persons whose privacy interests are sought to be protected;
(4) Whether the action is against a governmental or private party; and
(5) The risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (enumeration and structure added); see also *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir.

2014)).   The trial court must balance the factors against the public's interest in knowing the names

of the litigants.  *Pub. Citizen*, 749 F.3d at 273–74.

The Plaintiffs ask to proceed in this litigation under a pseudonym.  They assert that the

*Jacobson* factors favor anonymity and argue that their identities are "sensitive and highly personal"

information.  They contend that if such information is revealed, the public will have access to

their prior convictions and will be able to access their addresses through the sex offender registry.

This could result in "bullying of their children, harassment of them and their family members and

possible vigilante activities."  (Pls.' Mot. at 7.)  They further contend that they will be exposed

to threats of violence because "sex offenders in any context are at risk of being subjected to

hostility, harassment, and physical injury, including murder."  (*Id.*)  Citing several past

incidences of violence against sex offenders, the Plaintiffs assert that they "fear violent reprisals."

(*Id.*)  The Plaintiffs also assert that because they are challenging government activity, that too weighs in favor of anonymity.  Lastly, the Plaintiffs argue that the Defendant will not be prejudiced if they are permitted to proceed anonymously because revealing their identities is not necessary to resolve the purely legal issues presented in this case.  They offer to disclose their identities through a protective order if the Defendant must know their identities.

The Defendant argues that the *Jacobson* factors weigh against anonymity.   He argues that the Plaintiffs' request for anonymity is to "'avoid the annoyance and criticism that may attend litigation' rather than 'to preserve privacy in a matter of sensitive and highly personal nature.'" (Def.' Resp. at 6.)   He asserts that sensitive information is unlikely to be uncovered during the case given the purely legal issues and the sensitive information the Plaintiffs seek to keep private is already public given "their statuses as registered sex offenders."  (*Id.*)  The Defendant further asserts that the Plaintiffs have failed to demonstrate that their identification poses a risk of retaliatory physical or mental harm.  He argues that the past incidences of violence against sex offenders cited by the Plaintiffs involved sex offenders who were targeted "because of their status as registered sex offenders, not because they brought a lawsuit against registry requirements." (*Id.* at 7-8.)   He further argues that the Plaintiffs failed to demonstrate threats against themselves and "concede that they haven't proved they 'face a danger of physical injury,'" but rather "claim[] it's enough to 'simply show that they might face such a threat.'"  (*Id.*, citing Pls.' Mot. at 10.) The Defendant contends that the Plaintiffs' age and his status as a governmental party weigh against anonymity.  He further contends that he will be prejudiced if anonymity were permitted because he would be subject to a protective order.  He asserts an additional factor weighs against

3

anonymity, specifically the Plaintiffs being class members. Lastly, the Defendant asserts that the Plaintiffs' interests in anonymity do not outweigh the public's right to access.

Assessing the *Jacobson* factors, the Court finds that they weigh in favor of the Plaintiffs proceeding anonymously. The first and second *Jacobson* factors, privacy interest and risk of retaliation, counsel in favor of anonymity. Although the Plaintiffs may have a diminished privacy interest given that they are listed on the West Virginia Sex Offense Registry as sex offenders, see *Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022), they still have "'sensitive and highly personal' privacy interests" in their First Amendment rights they allege are being violated by the requirement of § 15-12-2(d)(8) to disclose their internet account information. *John Does 1-5 v. McCrory*, No. 1:13CV711, 2014 WL 29352, at *2 (M.D. N.C. Jan. 3, 2014) (citing *Doe v. Pittsylvania Cnty., Va.*, 844 F.Supp.2d 724, 729 (W.D. Va. 2012) (explaining that "rights guaranteed by the First Amendment. . . are traditionally considered 'sensitive and highly personal' privacy interests"). Additionally, the Plaintiffs, citing recent instances of targeted violence against sex offenders, have provided sufficient evidence to indicate that there is a genuine risk that they could be targeted due to their status as sex offenders if their identities are revealed through this litigation.[1]

The third *Jacobson* factor, the age of the person whose privacy interests are sought to be protected, does not counsel for or against proceeding in anonymity. The fourth factor, whether the action is against the government, cuts in favor of anonymity. Compared with actions against private parties, plaintiffs with claims against the government are more likely to be able to proceed

---

[1] The Defendant argues that basing the second *Jacobson* factor on the risks posed to sex offenders would create a general rule that all sex offenders are owed anonymity. However, given the nature of this case, the cited instances of targeted violence and the privacy interests at stake, the Court finds that there is a genuine risk posed to the Plaintiffs. Disclosure of their identities would place an unnecessary spotlight on them as sex offenders who are ultimately seeking to prevent disclosure of their private internet information.

in anonymity, because "actions against the government do no harm to its reputation." *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) (citing *Doe v. Pittsylvania Cnty., Va.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012)). Here, the Defendant is a government actor, acting in his official capacity as Superintendent of the West Virginia State Police, which is responsible for enforcement of the WV SORA.

Similarly, the fifth factor, the prejudice to the Defendant if the Plaintiffs were to proceed anonymously, is minimal to non-existent. The identity of the Plaintiffs is irrelevant to the "purely legal" merits of this case. *Doe v. Alaska*, No. 96–35873, 1997 WL 547941, at *1 (9th Cir. Sept. 2, 1997). The focal point of this case is the legal question of whether §15-12-2(d)(8) violates the First Amendment and/or the Due Process Clause of the Fourteenth Amendment.

Having carefully considered these factors, the Court finds that they weigh in favor of anonymity under the circumstances presented in this case.[2] Moreover, given the nature and circumstances of this case, the Court further finds that the Plaintiffs' interest in protecting themselves and their families outweighs any interest the public has in knowing their identities. Accordingly, the Court **ORDERS** that the *Plaintiff's Motion for Permission to Proceed Anonymously* (Document 3) be **GRANTED**. The Plaintiffs should proceed under the pseudonym "Does 1-3." Any document necessarily submitted and signed using the Plaintiffs' true names should be filed under seal to conceal them from public view and a corresponding redacted or anonymized copy shall be filed publicly. The parties, their counsel and counsel's employees are hereby **ORDERED** to keep the identity of the Plaintiffs strictly confidential and are prohibited

---

[2] Because the Court finds that the *Jacobson* factors weigh in favor of anonymity, the Court declines the opportunity to consider the additional factor raised by the Defendant.

from disclosing the Plaintiffs' identities publicly or to any individual not subject to this Protective Order.

## FACTUAL BACKGROUND

The Plaintiffs, Does 1-3, are convicted sex offenders who are registered under the West Virginia Sex Offense Registry pursuant to the West Virginia Sex Offender Registration Act ("WV SORA"). The Defendant, Colonel James L. Mitchell, is the Superintendent of the West Virginia State Police, the agency responsible for enforcing the WV SORA. The Plaintiffs, both individually and on behalf of members of a proposed class, are challenging W. Va. Code §15-12-2(d)(8) as violative of both the First and Fourteenth Amendments.

West Virginia Code §15-12-2(d)(8) requires registered sex offenders to disclose and provide to the West Virginia State Police ("WVSP") "[i]nformation relating to any Internet accounts the registrant has and the screen names, user names, or aliases the registrant uses on the Internet."[3] W. Va. Code §15-12-2(d)(8). Any change in a sex offender's internet accounts must be reported to the WVSP in person within 10 business days, which typically requires an appointment and requires new photographs and fingerprints to be taken. *See Id.* at §§15-12-2(d)(8), 15-12-3; W. Va. Code R. § 81-14-17.6.c. Failure to disclose any required information, as well as any change in such information, can result in a felony conviction that includes 1-5 years of imprisonment. W. Va. Code §15-12-8(c). The WVSP is permitted to make certain disclosed information available to the public via the registry database on its website.[4] W. Va. Code §15-12-5.

---

[3] Sex offenders must disclose such information to the WVSP in person within three business days of their release from incarceration. *See* W Va. Code §§15-12-2(d)(8), (e)(1); W. Va. Code R. § 81-14-17.3.a.

[4] The Court notes that the registry on the WVSP website permits members of the public to search email and usernames of registered sex offenders.

The Plaintiffs assert that the disclosure requirement of §15-12-2(d)(8) violates the First Amendment due to being overly broad.  They claim, "the disclosure requirement specifically targets speakers engaged in online communication, thus targeting 'conduct with a significant expressive element' and having the inevitable effect of singling out those engaged in expressive activity.'"  (Compl. at ¶ 31, quoting *Cornelio v. Connecticut*, 32 F.4th 160, 169 (2nd Cir. 2022).)  They allege that it burdens protected speech because it "chills the willingness of individuals subject to it to engage in constitutionally protected speech online, knowing that doing so will trigger a reporting obligation to the state."  (*Id.* at ¶ 39.)  They provide examples of online speech that could be chilled, such as "creating an account to leave a comment on a news article or joining a social media platform."  (*Id.*)  The Plaintiffs allege that §15-12-2(d)(8) burdens the right to speak anonymously.  They allege that §15-12-2(d)(8) "targets an enormous amount of protected speech that is not narrowly drawn when judged against any legitimate sweep the statute might have".  They claim, "the information that is compelled to be provided to the state has either never or rarely been used for a legitimate governmental or law enforcement purpose such as, for example, to investigate, solve, or prevent a crime."  (*Id.* at ¶¶ 40-41.)

The Plaintiffs also assert that §15-12-2(d)(8) is unconstitutionally vague.  They allege that §15-12-2(d)(8) "does not define 'Internet account,' does not define 'information relating to,' and does not limit the requirement to social networking platforms, online communities, or accounts used for communication."  (*Id.* at ¶ 44.)  They assert that if read broadly, the term "any Internet account" could include "financial portals, employment platforms, medical accounts, subscription services, retail accounts, or other non-communicative online services."  (*Id.* at ¶¶ 45-46.)  They allege that "[t]he statute does not clarify whether it truly encompasses all Internet-based accounts

or only a narrower subset," and that "[r]egistrants must therefore guess" as to what information is required, leaving the "scope to discretionary interpretation in a criminally enforceable context." (*Id.* at ¶¶ 47, 53.)

The Plaintiffs request "an injunction prohibiting Defendant from continuing to enforce W.Va. Code Ann. §15-12-2 (d)(8) and databasing such information online for public search or disclosure."  (*Id.* at 13.)   The Defendant moves to dismiss.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

8

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

The Defendant moves to dismiss the Plaintiffs' claims of constitutional vagueness and overbreadth.   For the reasons stated below, the Court finds that the Defendant's motion should be granted as to the vagueness claim and denied as to the overbreadth claim.

*A. Due Process—Vagueness*

The Defendant argues that §15-12-2(d)(8) is not unconstitutionally vague.   Beginning with the term "information relating to," the Defendant asserts that based on its ordinary meaning, the Plaintiffs "would know they need to disclose the fact that they have an internet account." (Def.'s Mem. at 16.)   Additionally, the Defendant contends that given that §15-12-2(d)(8) requires disclosure of not only "information relating to any Internet accounts," but also "screen names, user names, or aliases," "information relating to" should be understood as requiring "information needed for identification purposes."   (Def.'s Reply at 15.)   Turning to the term "any Internet accounts," the Defendant argues it is clear the Plaintiffs understand that it applies to "any" internet account, meaning that it is not limited to accounts involving communication and that every account must be disclosed.   The Defendant also argues that the statute's scienter requirement mitigates any vagueness issues because only those sex offenders who "knowingly" fail to disclose will be subject to conviction.   Moreover, the Defendant argues that the scienter requirement is not required to resolve any vagueness issues because the West Virginia Supreme Court in *State v. Nolte*, No. 13-0774, 2014 WL2404323 (W. Va. May 30, 2014), interpreted the meaning of §15-12-2(d)(8) and found it not to be unconstitutionally vague.

The Plaintiffs argue that §15-12-2(d)(8) is unconstitutionally vague.   They argue that the operative terms of §15-12-2(d)(8) "provide no meaningful standards for determining what must

10

be disclosed." (Pls.' Resp. at 17.) They further argue the term "'information relating to' could include a vast array of information" and that although the Defendant argues the provision requires the collection of all internet accounts, such a requirement would lead to absurd results given that one registrant alone may have hundreds of internet accounts. (*Id.*) Additionally, the Plaintiffs assert that while the meaning of the words may be clear when read individually, "[t]aken together, however, they cause both registrants and law enforcement officers alike to guess their meaning and at the outer boundaries of the statute – and for registrants, they are guessing at the risk of criminal prosecution with lengthy incarceration times." (*Id.* at 18.) They further assert that the statute's scienter requirement does not save §15-12-2(d)(8) from the underlying vagueness issues because "[a] requirement of 'knowingly' cannot mitigate whether law enforcement apply the law in an arbitrary and discriminatory manner." (*Id.* at 19.)

The doctrine of void for vagueness, as applicable to the states, is governed by the Due Process Clause of the Fourteenth Amendment. *See Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019). This doctrine applies when a statute "fails to 'give a person of ordinary intelligence adequate notice of what conduct is prohibited' or lacks 'sufficient standards to prevent arbitrary and discriminatory enforcement.'" *Carolina Youth Action Project; D.S. by and through Ford v. Wilson*, 60 F.4th 770, 781 (4th Cir. 2023) (citing *Manning*, 930 F.3d at 272). The vagueness doctrine requires a statute to provide sufficient notice, so citizens are able to "conform their conduct to the proscriptions of the law." *Manning*, 930 F.3d at 274 (citing *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999)). A statute fails to provide sufficient notice, and therefore, is unconstitutionally vague, if it "fails to provide any standard of conduct by which persons can determine whether they are violating the statute." *Id.* The vagueness doctrine also

11

requires a statute to provide "minimal guidelines to govern law enforcement." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). A statute that fails to provide minimal guidelines is vague because it "impermissibly delegates basic policy matters to [enforcers] for resolution on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application." *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F.Supp.3d 66, 116 (D. Md. 2025) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

West Virginia Code §15-12-2(d)(8) provides that any person required to register as a sex offender must disclose to the WVSP "[i]nformation relating to any Internet accounts the registrant has and the screen names, user names, or aliases the registrant uses on the Internet." W Va. Code §15-12-2(d)(8). The Plaintiffs assert that §15-12-2(d)(8) is unconstitutionally vague because it is unclear what they must disclose as it relates to the terms "information relating to" and "any Internet account," and that it leaves open the possibility of arbitrary enforcement.

As the Fourth Circuit explained, "[e]ven when bringing a facial challenge, a party may contest certain provisions of a statute without taking on the whole statute." *Martin v. Lloyd*, 700 F.3d 132, 136 (4th Cir. 2012) (citing *Reno v. Am. C.L. Union*, 521 U.S. 844 (1997)). However, in such cases, "a court is not confined to the plain language of the contested statute when assessing a void-for-vagueness claim." *Id.* (citing *Kolender*, 461 U.S. at 355). Phrases or words within a statute "should be considered in the context of the statute as a whole." *Id.* Moreover, the Fourth Circuit has also explained that a court should consider adopting a narrowing construction of a state statute if "such a construction is reasonable and readily apparent." *Toghill v. Clarke*, 877 F.3d 547, 556 (4th Cir. 2017) (quoting *Boos v. Barry*, 485 U.S. 312, 330-31 (1988)). Where "the state court has provided an authoritative, narrowing construction of a state statute, the 'federal court

must. . . consider [the] limiting construction that a state court. . . has proffered' when evaluating a facial challenge." *Id.* at 558 (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982)).  A federal court is "bound to accept the state supreme court's construction 'as if written into the statutes themselves.'" *Id.* (quoting *Hebert v. Louisiana*, 272 U.S. 312, 317 (1926)) (stating that "[t]he state court's 'construction fixes the meaning of the statute,' 'putting the[] words in the statute as definitively as if it had been so amended by the legislature'") (quoting *Winters v. New York*, 333 U.S. 507, 514 (1948)).

The West Virginia Supreme Court has previously interpreted §15-12-2(d)(8) in *State v. Nolte*, No. 13-0774, 2014 WL 2404323 (W. Va. 2014).  The Court observes that the West Virginia Supreme Court's interpretation of § 15-12-2(d)(8) is that registered sex offenders must disclose all of their internet accounts.  The Court in *Nolte*, when interpreting §15-12-2(d)(8), explained that the purpose of the act is to "allow the public and law enforcement to monitor the whereabouts of sex offenders, and while the statute is broad in scope, it is at the same time rather specific." *State v. Nolte*, No. 13-0774, 2014 WL 2404323, at *3 (W. Va. 2014).  The Court interpreted "the terms 'internet accounts,' 'screen names,' user names,' and 'aliases' to encompass *all online activity*." *Id.* (emphasis added).  Given that the West Virginia Supreme Court in *Nolte* interpreted such terms as encompassing "all online activity," it is clear that §15-12-2(d)(8) requires sex offenders to disclose all of their accounts.[5] *Id.*

Even without the West Virginia Supreme Court's interpretation, the Court finds §15-12-2(d)(8) is not unconstitutionally vague.  Initially, considering the term "any Internet accounts," it

---

[5] Although the West Virginia Supreme Court was primarily concerned with social media accounts, such as Facebook and MySpace accounts, the Court finds that based on the West Virginia Supreme Court's interpretation that §15-12-2(d)(8) encompasses "all online activity," it would likely find that other internet accounts beyond those related to social media are encompassed by it as well.

is clear based on the plain meaning of this term that it requires registered sex offenders to disclose all of their internet accounts.   The term "any" is defined as "one, no matter what one" or "every." *Any*, Merriam-Webster's Unabridged Dictionary. Therefore, giving the word its ordinary meaning and because the word "any" precedes "Internet accounts," it is clear that registered sex offenders are required to disclose every internet account they have.   Thus, the term "any Internet accounts" does not render §15-12-2(d)(8) unconstitutionally vague.

The Plaintiffs also assert that the term "[i]nformation relating to" is vague in that it is unclear what information must be disclosed in relation to the disclosure of internet accounts. However, the Court finds that this language also does not render §15-12-2(d)(8) unconstitutionally vague.   Specifically, based on the text of §15-12-2(d)(8), it is clear that the West Virginia legislature intended for the term "[i]nformation relating to" to require a sex offender to disclose information that would readily allow for identification of accounts associated with the sex offender.   Such a reading is confirmed by the text given that §15-12-2(d)(8) not only requires sex offenders to disclose "[i]nformation relating to Internet accounts," but also the "screen names, user names, or aliases" that a sex offender uses on the internet.   The language of the statute confirms the legislature's intent to identify or gather information regarding the sex offender's internet accounts and the accessibility to the same. The Court finds that a person of ordinary intelligence is given adequate notice of what is required under §15-12-2(d)(8).   Thus, the term "[i[information relating to", also does not render the statute unconstitutionally vague.   The Court finds the Plaintiffs do not have a valid vagueness claim and, therefore, that claim must be dismissed.

14

### B. First Amendment—Overbreadth

The Defendant argues that the Plaintiffs bring a facial overbreadth challenge and fail to meet the difficult burden required to demonstrate such a challenge. He asserts that the complaint does not address the plainly legitimate sweep of §15-12-2(d)(8) and does not measure its constitutional applications against its unconstitutional applications. He contends that the Plaintiffs fail to mention the Act's non-speech-related applications, such as the disclosure of "financial portals, medical accounts, subscription services, retail accounts, [and] other non-communicative online services," which do not implicate the First Amendment. (Def.'s Mem. at 7, quoting Compl. at ¶ 46.) The Defendant argues that of the applications referenced by the Plaintiffs, such as social media platforms, not all those applications are protected by the First Amendment because less than half of online users post their own content and 70% rarely or never engage in political speech. He also asserts that the Plaintiffs fail to address other constitutional applications such as those applicable to registrants who have used the internet to engage in sex crimes. The Defendant contends that intermediate scrutiny applies and that the state has a significant government interest in protecting the public from sex crimes. Lastly, he argues that §15-12-2(d)(8) is narrowly tailored because it does not prevent anyone from speaking, its burdens on speech are minor, it leaves open alternative channels of communication, the information revealed is limited, it provides the state with an important tool to protect the public by knowing registrants' online whereabouts, and it applies only to convicted sex offenders required to register.

The Plaintiffs argue that they assert both as-applied and facial overbreadth challenges and that §15-12-2(d)(8) is overbroad on its face and as-applied to the Plaintiffs. As to their facial challenge, the Plaintiffs argue that they are not required to "catalogue every conceivable

15

application of West Virginia's Internet ID disclosure requirement, nor are they required to perform the full comparative analysis that *Moody* outlines for courts to undertake on a developed record." (Pls.' Resp. at 6.)    Instead, they assert that they need only plausibly allege that any unconstitutional applications of §15-12-2(d)(8) substantially outweigh its constitutional ones. The Plaintiffs argue that they have done exactly that by asserting that §15-12-2(d)(8) covers an enormous amount of speech and has a chilling effect given "that the statute's breadth, combined with the threat of felony prosecution for any omission, deters registrants from creating or using any Internet account." (*Id.* at 8.)    Additionally, they assert that §15-12-2(d)(8) "extinguishes registrants' right to speak anonymously" given that the public is able to utilize the registry database to search emails and usernames. (*Id.*)    They further assert that the Defendant's reliance on statistics about passive social media use is misplaced because "[e]xpressive activity on social media platforms can include comments, replies, shares with commentary, and participation in groups or discussions."[6] (*Id.* at 9.)    They also argue that the Defendant has not offered any evidence that collecting sex offenders' usernames advances public safety.  The Plaintiffs argue that §15-12-2(d)(8) is not narrowly tailored because it applies to a wide range of accounts and information, it encompasses all registered sex offenders and is not tailored to those offenders that used the internet to commit their offenses.  Also, it permits the public to search sex offenders' emails and usernames, it requires sex offenders to update required information in person, and it burdens speech by chilling online speech for registrants.[7]

---

[6] They argue that §15-12-2(d)(8) burdens "the right to receive information and ideas." (Pls.' Resp. at 7, quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969).)

[7] The Plaintiffs argue that the Defendant's attempts to demonstrate that §15-12-2(d)(8) is narrowly tailored fail.  They assert that just because sex offenders have the ability to engage in non-anonymous online speech or have alternative means of anonymous speech does not "erase the burden the law places on registrant's First Amendment rights." (Pls.' Resp. at 14.)  They also assert that "investigative convenience alone cannot justify suppression of lawful speech, especially when the price of that convenience is attached to a felony conviction and potential incarceration." (*Id.* at

16

As a preliminary matter, the Court must determine whether the Plaintiffs bring this action as a facial or as-applied challenge.[8]   Upon review of the complaint, it appears that the Plaintiffs have brought only a facial challenge.   Although they assert that they are bringing an as-applied challenge as well, that alone is not sufficient because "[t]he label is not what matters."   *Bucklew v. Precythe*, 587 U.S. 119, 139 (2019); *see also Doe v. Burlew*, 165 F.4th 525, 531 (6th Cir. 2026). There are several indicators in the complaint that point to the fact the Plaintiffs have brought only a facial challenge.   The Plaintiffs' complaint provides that they are bringing a class action "challenging the constitutionality of the provision of W. Va. Code Ann. §15-12-2 (d)(8) which requires individuals listed on West Virginia's Sex Offense Registry to disclose and provide to law enforcement 'information relating to any Internet accounts the registrant has and the screen names, user names, or aliases the registrant uses on the Internet.'"   (Compl. at ¶ 1.)   Too, the Plaintiffs primarily assert their First Amendment challenge in the abstract.   Although their complaint provides examples of types of speech that are chilled as a result of the internet disclosure requirement of §15-12-2(d)(8), such as "creating an account to leave a comment on a news article, or joining a social media platform," (*Id.* at ¶ 39), it does not provide how those examples are directly applicable to the Plaintiffs.   Additionally, the complaint provides that "[t]he challenged provision targets an enormous amount of protected speech that is not narrowly drawn when judged against any legitimate sweep the statute might have."   (*Id.* at ¶¶ 38-39.)   Lastly, the Plaintiffs seek an injunction that prohibits the "Defendant from continuing to enforce W. Va. Code Ann.

---

15.)   Additionally, the Plaintiffs argue that the length of a registrant's reporting term under §15-12-2(d)(8) cannot cure its breadth because "[t]he fact that some registrants must comply for ten years and others for life does not make the statute tailored."   (*Id.* at 16.)

[8] Indeed, determining whether the Plaintiffs brought a facial or as-applied challenge will dictate the level of analysis that must be conducted when analyzing their overbreadth challenge.   *See Moody v. NetChoice*, LLC, 603 U.S. 707, 723-24 (2024); *see also Doe v. Burlew*, 165 F.4th 525, 532-33 (6th Cir. 2026).

17

§15-12-2 (d)(8) and databasing such information online for public search or disclosure."   (*Id.* at 13.)   In sum, the Plaintiffs bring a facial challenge and not an as-applied challenge.

The Supreme Court has recently clarified the two-step framework used to analyze facial overbreadth challenges.   First, courts must determine the "scope" of the challenged state law. *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024); *see also United States v. Arthur*, 160 F.4th 597, 606 (4th Cir. 2025).   In other words, a court must assess the "activities, by what actors, [that] the law[] prohibit[s] or otherwise regulate[s]" to "determine what [the law] covers."   *Moody*, 603 U.S. at 724-25.   The Plaintiffs bear the burden of "demonstrat[ing] from the text of [the law] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally."   *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988); *see also Moody*, 603 U.S. at 743-44.   Second, courts must determine "which of the law['s] applications violate the First Amendment, and [] measure them against the rest."   *Moody*, 603 U.S. at 725.   In other words, to decide the facial challenge, a court "must explore the law['s] full range of applications—the constitutionally impermissible and permissible both—and compare the two sets."   *Id.* at 726.   "The question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"   *Id.* at 723.   A law may be struck down even if it has "a plainly legitimate sweep. . . [b]ut that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones."   *Id.* at 723-24.

The Court begins by addressing the scope of §15-12-2(d)(8).   As previously determined, because §15-12-2(d)(8) requires registered sex offenders to disclose "any Internet accounts," it requires them to disclose every internet account that they have.   Thus, based on this construction of §15-12-2(d)(8), its scope clearly encompasses a broad range of accounts that a sex offender has,

as well as the "screen names, user names, and aliases" that a sex offender uses.   W. Va. Code §15-12-2(d)(8).   Moreover, all registered sex offenders are subject to the disclosure requirement. They must disclose the required information in person within three business days of release and within ten business days of any change in such information.   *Id.* at §§15-12-2(d)(8), (e)(1), 15-12-3; W. Va. Code R. §§ 81-14-17.3.a., 81-14-17.6.c.

Having determined the scope of §15-12-2(d)(8), the Court addresses whether the Plaintiffs have plausibly alleged that the applications of §15-12-2(d)(8) violate the First Amendment.   The Plaintiffs allege that the internet reporting requirements of §15-12-2(d)(8) carry criminal penalties for failure to disclose information relating to a sex offender's internet accounts, as well as their screen names, user names, and aliases.   (Compl. at ¶¶ 2, 19.)   They further allege that §15-12-2(d)(8) requires them to report in person within 10 days of any change of an internet account, which typically requires an appointment as well as new photographs and fingerprints to be taken. (*Id.* at ¶ 17.)   They allege the disclosure requirement of §15-12-2(d)(8) "specifically targets speakers engaged in online communication," and that it burdens protected speech by chilling the willingness of individuals to speak on the internet, "knowing that doing so will trigger a reporting obligation to the state."   (*Id.* at ¶¶ 30, 39.)   In addition, they allege the disclosure requirement of §15-12-2(d)(8) burdens the right to speak anonymously because certain disclosed information is made available to the public.   (*Id.* at ¶¶ 3, 30.)   They also allege that §15-12-2(d)(8) "targets an enormous amount of protected speech that is not narrowly drawn when judged against any legitimate sweep the statute might have" and that "the information that is compelled to be provided to the state has either never or rarely been used for a legitimate governmental or law enforcement purpose such as, for example, to investigate, solve, or prevent a crime."   (*Id.* at ¶¶ 40-41.)   The

19

Court finds that these allegations and the reasonable inferences to be drawn therefrom are sufficient to plausibly set forth a facial overbreadth challenge.[9]

Lastly, the Defendant argues that the Plaintiffs are unable to *demonstrate* that a substantial amount of the applications of §15-12-2(d)(8) are unconstitutional given that it encompasses non-expressive conduct that does not implicate the First Amendment, such as bank accounts, medical accounts, subscription service accounts, and online retail accounts,   However, that is an argument for another day given the standard for analysis under Rule 12(b)(6).   Given the Plaintiffs have plausibly alleged that the disclosure requirement of §15-12-2(d)(8) burdens protected speech and the right to speak anonymously, the Court finds they have plausibly alleged that a substantial amount of its applications are unconstitutional in relation to its legitimate sweep.

Because the Plaintiffs have plausibly pled that §15-12-2(d)(8) is overbroad and there is a need for a more developed record as it relates to whether it materially advances the State's interest and is narrowly tailored to serve that interest, the Court finds that the motion to dismiss the Plaintiffs' First Amendment claim must be denied.

---

[9] The Defendant argues that the Plaintiffs fail to list all of the applications of §15-12-2(d)(8) and further fail to "measure the constitutional against the unconstitutional applications."  (Def.'s Mem. at 7, quoting *Moody*, 603 U.S. at 724-25.)   However, although the Plaintiff does not include all the statute's applications, the Court finds the Plaintiffs' allegations sufficient to allege a facial overbreadth challenge because they are not required to list every conceivable application in order to assert a claim.  *See McAllister v. Clark Cnty.*, 746 F.Supp.3d 918, 940 (D. Nev. Aug. 21, 2024) (finding that plaintiffs were not required to plead every alleged unconstitutional application to adequately state an overbreadth claim).  Moreover, the Plaintiffs are also not required to weigh the constitutional against the unconstitutional applications in order to sufficiently allege such a challenge because they only have to allege facts that make it plausible that the statute's unconstitutional applications substantially outweigh its constitutional ones, which they do.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant James L. Mitchell's Motion to Dismiss* (Document 13) be **GRANTED** as to the Plaintiffs' vagueness claim and **DENIED** as to the First Amendment claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    July 17, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

21